JOB G. SELPH and SARAH H. SELPH *vs*. MARK HOWLAND.

A married woman has no power to contract, either separately, or jointly with her husband, for the labor of a mechanic to be performed in, or for materials furnished for, building or repairing upon the separate estate of the wife.

The lien given by statute to a mechanic, for work and labor done upon, or materials furnished for, any building,.does not attach to the separate property of a wife, upon her contract either separate, or jointly with her husband, and her separate property cannot be made liable at law for such contract.

The statute designates the particular mode in which a married woman may alienate her.separate property, real and personal; and in certain cases, and for specified purposes, has authorized her to enter into contracts, separately, or jointly with her husband; and by such engagements to bind the proceeds and income of her separate estate. These directions define and limit the powers of *femes covert* in regard to their separate estates.

That section of the act of 1846, which provides "That all suits, in relation to or affecting the separate property of the wife, either real or personal, shal be prosecuted or defended in the joint names of the husband and wife, and may be prosecuted in the courts of common law jurisdiction, in all cases in which said courts would have jurisdiction of the subject-matter, in a controversy between unmarried persons, simply supplies a legal remedy upon the contracts which were authorized in the preceding section, and does not repeal or in any way modify its provisions.

IN error from the circuit court of Harrison county; Hon. Wiley P. Harris, judge.

At the March term of 1847, of the circuit court of Harrison county, defendant in error filed his petition for his lien as a carpenter, for work and labor done, and for materials furnished in erecting a dwelling-house, on the land .held by plaintiffs in error, and for the payment of $118 dollars.

The legal title to the premises was in R. L. Dixon, who held, by virtue of a deed of trust from William H. Calvert and M. H. Calvert, for the separate use of Sarah Selph, one of the defendants, and wife of Job G. Selph, her co-defendant.

Selph and wife demurred to the petition, which demurrer was sustained, and leave given to amend. The amended petition was also demurred to, and the demurrer overruled.

At the request of the plaintiff, in the court below, the court charged the jury, "That a married woman is liable for a contract, express or implied, in relation to, or affecting the separate property, real or personal, of the wife, and if the jury believe, from the evidence given, that the services rendered, and materials furnished, as charged in this case, were rendered and furnished in buildings and improvements made by the plaintiff, on the lot or premises owned by Mrs. Selph, with her approbation and consent, then they should find their verdict for the plaintiff."

The defendant asked the court to charge the jury, "That if, from the evidence introduced by the plaintiff, they have shown a title out of Selph and wife to the premises in question, and that they have not shown that they were lessees of said premises, then they must find for the defendant;" which charge was refused.

At the request of defendant, the court charged the jury, "That, in a suit to enforce a mechanic's lien against real estate, all the parties in interest must be made parties to the suit, and that a trustee holding the legal title is a proper party in interest, whenever the interest of the person for whom he is trustee is involved; that, unless the plaintiff has shown that Mrs. Selph contracted either expressly or impliedly, for the labor and materials, as well as Job G. Selph, then they cannot recover in this action."

The jury found the issue in favor of the plaintiff, and rendered a verdict against the defendants, for the amount claimed in the petition, and the court rendered judgment against them for that amount, and ordered that execution issue to be levied upon the premises in controversy.

The defendants moved for a new trial, upon the ground that the verdict was against the law and evidence, and against the charges of the court, which motion was overruled.

Defendants filed their bills of exception, and sued out a writ of error.

The errors assigned are, 1. That the court erred in not sustaining the defendants' demurrer to the amended petition.

2. That the court erred in giving judgment for plaintiff, while defendants' second plea was undisposed of, and the demurrer of the plaintiff to said plea undisposed of.

3. In giving the charge asked by plaintiff.

4. In refusing to give the first charge asked by the defendants.

5. In refusing to sustain the motion for a new trial, and giving judgment for the plaintiff.

*R. Seal,* for appellants.

*W. A. Champlin,* on the same side.

*John Henderson,* for appellees.

Mr. Chief Justice SMITH delivered the opinion of the court.

Howland filed his petition in the circuit court of Harrison county, under the mechanics' lien law, to subject certain real property, situated at Pass Christian, to the payment of a debt due to him for materials furnished and labor performed as a mechanic. The agreement, in execution of which the work was done and the materials furnished, was entered into by the petitioner, with Job G. Selph, and Mrs. Sarah H. Selph, his wife.

The legal title to the real estate, which it is the object of the petition to charge, is held by R. L. Dixon, to whom it was conveyed in 1845, in trust for the sole and separate use of Mrs. Selph and her heirs.

The proceedings in the case were at law; the suit was brought and conducted throughout as a common law suit. The defendants filed a demurrer to the petition, which was overruled. A verdict and judgment were rendered in favor of the petitioner, from which the defendants sued out a writ of error to this court.

The main question in the case is, Whether the contract of Selph and his wife, as stated in the petition and admitted by

their demurrer, is valid at law, as to the latter? In other words, Whether the agreement of Mrs. Selph can be enforced in a court of law against her separate estate?

As a general rule, at common law, a married woman is incapable of binding herself or her separate property, by her contracts. She is not liable, personally, for any debt; nor is her separate estate in general chargeable in equity for her general debts, or her general personal engagements. 1 Brown, Ch. R. 18, note; *Gardner* v. *Gardner,* 22 Wend. 526; 2 Story, Eq. Jur. § 1400.

But it is contended, that by the statute passed February 28, 1846, amendatory of the act for the protection and preservation of the rights of married women, Mrs. Selph was vested with ample authority, by separate agreement, or joint contract with her husband, to bind herself and her separate property at law for the payment of the demand of the petitioner.

The original statute prescribed the mode in which a *feme covert* might alienate her separate property, and directed that it should not be done otherwise. No express power was given to her to contract in reference to her separate estate for any other purpose. This provision was repealed by the act of 1846; and express authority was conferred upon *femes covert* to contract either separately or jointly with their husbands, for certain specified purposes, and by such contracts to subject the proceeds and income of their separate estates. The language of the statute in reference to this subject is, " That all contracts for the purchase of supplies for the plantation and slaves, or for the slaves alone, owned by any married woman, made by the husband and wife, or by either of them, either express or implied, shall be obligatory upon the husband and wife, and may be enforced against the proceeds and income of the separate property of such married woman." The *feme covert* is vested also with the power to contract for the hire of her slaves, or for the employment of an agent or overseer, for their management and control.

It is not pretended that Mrs. Selph was vested with authority, either at law or in equity, by the terms of the deed to Dixon, to charge her interest in the property; and assuming

that her power to contract, in reference to her separate estate, was limited by the express provisons of the statute, there appears to be no ground for assuming that the contract alleged in the petition could be enforced at law against the property; unless, as it is contended, the provision which gives to the courts of common law jurisdiction upon such contracts, and authorizes the maintenance of suits against husband and wife jointly, has had the effect, by implication, to enlarge the powers of married women, and to place them in all respects, in reference to property held under the statute, upon the footing of *femes sole.*

The provision referred to is contained in the following words: —" All suits upon contract, in relation to or affecting the separate property of the wife, either real or personal, shall be prosecuted or defended in the joint names of the husband and wife, and may be prosecuted in the courts of common law jurisdiction, in all cases in which said courts would have jurisdiction of the subject-matter in controversy between unmarried persons."

The position contended for is, that the contracts of *femes covert*, in respect to their separate estates, may be enforced at law, under the statute in all cases where the same contracts would be recognised and enforced in courts of equity. This position, as it is applied to the case at bar, is based upon another assumption; which is, that according to the doctrine of this court, a married woman is, as to her separate property, in all respects a *feme sole.*

The reverse of this doctrine is recognised in *Doty* v. *Mitchell*, 9 S. & M. 435. It is there held, that a married woman, in respect to her separate estate, is a *feme sole* only so far as she is constituted such by the instrument conferring the estate, and hence in the disposition of such estate, that she is restricted to the ·particular mode or manner prescribed by the instrument under which she holds. But it is unnecessary to invoke the rule recognised in *Doty* v. *Mitchell* to determine this question.

The statute designates the particular modes in which a married woman may alienate her separate property, real and

personal; and in certain cases, and for specified purposes, has authorized her to enter into contracts, separately, or jointly with her husband, and by such engagements to bind the proceeds and income of her separate estate. These directions define and limit the powers of *femes covert* in regard to their separate estates. The construction which it is insisted should be put upon the section above quoted, would in effect repeal these directions, and leave the authority of the married woman unrestricted, either as to the mode of conveyance or the extent of her capacity to bind either her separate property or only its proceeds and income. We do not believe that such was the intention of the legislature. It appears to us that the legislature, in the adoption of this section of the statute, designed simply to supply a legal remedy upon the contracts which were authorized in the preceding section, and not to repeal or in any wise modify its provisions.

Upon this construction of the statute Mrs. Selph had no power to contract in the form and for the purposes alleged in the petition. Her contract, being void at law, could not be enforced by this proceeding. The demurrer should have been sustained and the petition dismissed, which is ordered by this court.