## SQUIRE TAYLOR ET AL.

### v.

## SOLEN F. WARREN ET AL., CO-PARTNERS.

*Sales—Express and Implied Warranties—Fraud—Instructions.*

1. An instruction having no basis in the evidence is erroneous.
2. Where the instructions given ignore the real issues involved in the case this court will reverse.

[Opinion filed May 28, 1888.]

APPEAL from the County Court of De Kalb County; the Hon. CHARLES A. BISHOP, Judge, presiding.

Messrs. I. V. RANDALL and CARNES & DENTON, for appellants.

Messrs. D. W. BAXTER and STEPHENS & CROCKER, for appellees.

BAKER, J. This was assumpsit by S. F. Warren & Co. against appellants for the recovery of $500, alleged to have been agreed upon between the parties as the price of a one-half interest in a skating rink building, with the skates and other appurtenances, located on a leased lot in the city of De Kalb. The general issue and a special plea were filed, and issues formed on both of them. The special plea was not a plea of fraud and circumvention, as seems to have been supposed in the court below. It did not even allege that the vendors knew, either that there were incumbrances on the building, or that there were not one hundred pairs of skates in the rink. The plea was a somewhat informal, but, perhaps, a substantially good plea, setting up the breach of the warranty in an executory contract for the purchase and sale of personal property, and subsequent rescission of such contract by the vendees on account of such breach of warranty. Doane v. Dunham, 65 Ill. 512. Beebe v. Swartwout, 3 Gilm. 162, 184; Voorhees v. Earl, 2 Hill, 288; Street v. Blay, 2 Barn. & Adol. 456.

In the case at bar, verdict and judgment in the trial court were in favor of S. F. Warren & Co., appellees.

There are several controversies of fact involved in the suit and at the trial there was sharp conflict in the testimony. The contention of the plaintiffs was that an unconditional sale of the property in question was made to the defendants for $500, to be paid by the joint note of defendants due January 1, 1886; that a bill of sale for the moiety of the skating rink property and an assignment of the lease were to be executed and delivered, and that said papers were, in fact, made and tendered, but that defendants refused to receive them or give a note for the consideration money. They also claimed that defendants examined the property and took possession of and operated the rink for several nights, but finding that the city authorities would not permit them to run it without paying a license tax therefor, and that the business was not so remunerative as they had expected, they refused to carry out their contract.

The contention of the defendants was that the bargain made was conditional; that appellees represented there were a certain number of skates; that the property was free from any

license tax against it, and made other representations in respect to the condition of the building; and that it was expressly agreed that if the property was not as represented, then it should be no trade; and that the property was not as represented. They also claimed it was not understood, in the event of a trade, that they should give their joint note for $500, but that it was the agreement appellant Morrell should pay his part of the purchase money in cash, and appellant Taylor his part by note. They also claimed they did not examine the rink, as testified to by Neff, and did not take possession of or run the rink, but that appellant Morrell was merely there on two evenings assisting one Wadsworth, and that Wadsworth was in charge and control of the rink on behalf of appellees, and received all the money taken in, and that the same was paid over to and accepted by appellees.

There was evidence in the case tending to prove express warranties on the part of the vendors, but no evidence whatever on which to base any theory of an implied warranty. The case was also wholly barren of testimony proving or tending to prove any fraud and circumvention on the part of the vendors.

The issues of fact involved in the suit were not fairly submitted to the jury by the instructions of the court. Six instructions were given at the instance of appellees, and not one of them had any proper bearing upon the questions of fact presented by the testimony, but they were all calculated to mystify and mislead the jury. Instructions to a jury should be based upon the evidence in the case on trial. The statement of even correct propositions of law will have the effect to work a wrong and injury if such propositions have no application to the facts which the testimony proves or tends to prove. Here, the instructions given ignored the real issues, and called and confined the attention of the jury to issues not involved in the case. The first, second and fifth of these instructions were well enough as statements of abstract principles of law bearing upon an issue of fraud; and the third and fourth were correct statements of certain rules of law applicable where an implied warranty is claimed. But no supposed case of either fraud or of an implied warranty was

either alleged in the pleadings or suggested by the evidence. Shackelton v. Lawrence, 65 Ill. 175.

The sixth and last instruction for appellees was, perhaps, especially vicious. It was as follows :

"If the jury believe from the evidence that the plaintiff, J. C. Neff, stated to the defendants at the time of sale that there were ninety-five pairs of skates in the rink, honestly believing such statement to be true, then such statement does not constitute a fraud, and affords no ground for avoiding such sale."

This was equivalent to directing the jury that, notwithstanding they might find from the weight of the evidence that the contract of sale was executory merely, and that the vendors made warranties which were broken before the contract was performed by either party, or might find that the contract was only a conditional executory contract of sale and the condition failed, yet the vendees would in law be bound to pay the agreed consideration.

The six instructions under consideration were, when applied to the evidence before the jury, all palpably erroneous. From the record there is no assurance that the jury considered and passed upon the real questions presented in the case.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*